UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHAVEL ASSOCIATES, INC., <br><br>                    Plaintiff, <br><br>        v. <br><br> ANAND INTERNATIONAL, SURESH GARG, RAKESH GARG AND KOMAL GARG, <br><br>                    Defendants. | CIVIL ACTION NO. 3:12 CV-7318-PGS-LHG <br><br> DOCUMENT ELECTRONICALLY FILED <br><br> **MOTION DATE:  March 4, 2013** |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO VACATE ENTRY OF DEFAULT & DISMISS PLAINTIFF'S COMPLAINT**

James O'Donohue
HILL WALLACK LLP
P.O. Box 5226
Princeton, NJ 08543-5226
(609) 924-0808
Attorneys for Shavel Associates, Inc.

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................ 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY.......................... 2

LEGAL ARGUMENT ..................................................................................... 7

POINT I ........................................................................................................... 7

    DEFENDANTS FAIL TO ESTABLISH GOOD CAUSE FOR VACATING
    ENTRY OF DEFAULT BECAUSE THEY HAVE NO MERITORIOUS
    DEFENSE AND OTHERWISE FAIL TO MEET THE FOUR-FACTOR TEST
    FOR VACATING ENTRY OF DEFAULT ......................................................... 7

POINT II .......................................................................................................... 10

    DEFENDANTS WERE PROPERLY SERVED UNDER THE HAGUE
    CONVENTION AND UNDER ALTERNATIVE SERVICE AS PROVIDED
    FOR UNDER RULE 4(F)(3) ............................................................................ 10

POINT III.......................................................................................................... 15

    THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS
    WHICH HAVE HAD SUBSTANTIAL CONTACTS WITH NEW JERSEY
    AND WHERE TRADITIONAL NOTIONS OF FAIR PLAY AND
    SUBSTANTIAL JUSTICE REQUIRE THEM TO DEFEND THEMSELVES IN
    NEW JERSEY ................................................................................................. 15

POINT IV.......................................................................................................... 21

    THIS COURT SHOULD RETAIN JURISDICTION OF THIS MATTER
    BECAUSE THE DISPUTE IS CONTRACTUAL, THE DISPUTE AROSE
    FROM DEFENDANTS' CONTACTS IN NEW JERSEY, AND PLAINTIFF IS
    IN NEW JERSEY ........................................................................................... 21

CONCLUSION.................................................................................................. 25

i

## TABLE OF AUTHORITIES

### Cases

Alchemie Intern. Inc. v. Metal World, Inc., 523 F. Supp. 1039 (D. N.J. 1981) ........................... 18

American Cyanamid Co. v. Picaso-Anstalt, 741 F.Supp. 1150 (D. N.J. 1990).......................... 21

Asahi Metal Industry Co. v. Super. Ct. of Cal., 480 U.S. 102 (1987)........................................ 19

Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985)...................................................... 16, 19

Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141 (3d Cir. 1992)........................................ 15, 19

Dollar Savings Bank v. First Security Bank of Utah, 746 F.2d 208 (3d Cir.1984) ..................... 15

Electro-Catheter Corp. v. Surgical Specialties Instrument Co., Inc., 587 F.Supp. 1446
   (D. N.J. 1984) ............................................................................................ 15, 18, 19

Emcasco Ins. Co. v. Sambrick, 834 F.2d 71 (3d Cir. 1987) ..................................................... 8, 9

Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S.Ct. 2846 (2011) .............................. 17

Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947). .................................................................. 23, 24

In re Heckmann Corp. Securities Litigation, No. 10-378, 2011 WL 5855333, at *4 (D.
   Del. Nov. 22, 2011) ............................................................................................... 14

International Shoe Co. v. Washington, 326 U.S. 310 (1945) ................................................ 15, 19

Lacey v. Cessna Aircraft Co., 862 F.2d 38 (3rd Cir. 1988)........................................................ 21

LG Elecs., Inc. v. ASKO Appliances, Inc., No. 08-828, 2009 WL 1811098 at *4 (D.
   Del. June 23, 2009)................................................................................................. 10

Marlabs Inc. v. Jakher, No. 07-cv-04074, 2010 WL 1644041, at *3 (D. N.J. Apr. 22,
   2010) ..................................................................................................................... 13

Miller v. Boston Scientific Corp., 280 F.Supp.2d 443 (D. N.J. 2005) ........................................ 22

Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950) ........................................ 12

Napp Technologies, L.L.C. v. Kiel Laboratories, Inc., No. 04-3135, 2008 WL
   5233708, at *4 (D. N.J. Dec. 12, 2008) .............................................. 14, 18, 19, 20

National Specialty Ins. Co. v. Papa, No. 11-2798, 2012 WL 868944, at *2 (D. N.J.
   Mar. 14, 2012) ....................................................................................................... 8, 9

One World Botanicals Ltd. v. Gulf Coast Nutritionals, Inc., 987 F. Supp. 317 (D. N.J.
   1997)....................................................................................................................... 16

Peerless Ins. Co. v. Ambi-Rad, Ltd., No. 07-5402, 2009 WL 790898, at *7 (D. N.J. Mar. 23, 2009) ................................................................................................ 22, 23

Piper Aircraft Co. v. Reyno, 454 U.S. 235 (1981).................................................. 21, 23

Technology Development Co., Ltd. v. Onischenko, 536 F.Supp.2d 511 (D. N.J. 2007)............. 22

U.S. v. $55,518.05 in U.S. Currency, 728 F.2d 192 (3d Cir. 1984) ............................... 8

United States Golf Ass'n v. United States Amateur Golf Ass'n., 690 F. Supp. 317 (D. N.J. 1988)...................................................................................................... 16

Western Union Telegraph v. T.S.I. Ltd., 545 F.Supp.; 329 (D. N.J. 1982)................................. 18

World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980) ..................................... 17, 20

Wyndham Hotels and Resorts, LLC v. Rhonda & Sons, Inc., No. 2:10-cv-2868, 2011 WL 1560666, at *2 (D. N.J. Apr. 25, 2012) ...................................................... 9

## Statutes

28 U.S.C §§1332 and 1441 ................................................................................ 7, 12

N.J.S.A. 56:8-1................................................................................................ 22

UCC §2-313 .................................................................................................... 5

UCC §2-314...................................................................................................... 5

UCC §2-315 .................................................................................................... 5

## Other Authorities

Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov.15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 ...................... 10, 11

## Rules

Fed. R. Civ. P. 4(f)(1) ...................................................................................... 10

Fed. R. Civ. P. 4(f)(3) ...................................................................................... 10, 14

Fed. R. Civ. P. 4(h)(1) ...................................................................................... 10

Rule 4:4-4(b)(2) ............................................................................................. 14

## PRELIMINARY STATEMENT

Defendants Anand International, Suresh Garg, Rakesh Garg, and Komal Garg (collectively hereinafter "Defendants") seek to vacate entry of default against Defendants and to dismiss plaintiff Shavel Associates, Inc.'s ("Shavel") complaint based upon an alleged failure to properly serve Defendants, for lack of jurisdiction and based upon the doctrine of *forum non conveniens*. Defendants seek this relief based on nothing more than bald assertions and conclusory statements, none of which can support their claims.

Defendants seek to vacate the entry of default based upon the alleged failure of Shavel to properly serve them under the terms of the Hague Convention. As an initial matter, Defendants are plain wrong – Shavel <u>did</u> attempt personal service, which service was constructively received by Defendants despite their obvious and repetitive evasion of service of process. Furthermore, the Third Circuit has held that when a defendant fails to set forth a meritorious defense, a request to vacate entry of default against it must fail. Defendants state no such meritorious defense. For these reasons, Defendants' motion to vacate entry of default must be denied.

Defendants further seek to dismiss Shavel's Complaint for failure to effect proper service under the Hague Convention; lack of personal jurisdiction over Defendants; and, under the doctrine of *forum non conveniens*. Shavel has demonstrated that it not only attempted to diligently effect service on Defendants under the Hague Convention, the responses by Defendants' creditor and attorney show that such process was indeed completed. Furthermore, Defendants were given reasonable notice to apprise them of the pendency of litigation against them. Therefore Defendants fail to establish that service was improper.

This Court has jurisdiction over Defendants. Through such factors as Defendants multiple visits to New Jersey; the underlying contract in dispute arose in New Jersey; Defendants

negotiated the terms of the contract in New Jersey; the shipment of products to New Jersey; Defendants' multiple contacts via email and telephone to Shavel in New Jersey; Defendants' attempts to collect payment for outstanding invoices in New Jersey; and, the flow of products manufactured by Defendants into the stream of commerce in New Jersey all establish the requisite minimum contacts to confer personal jurisdiction over Defendants. Defendants' multiple contacts were such that they could reasonably foresee being haled into court in New Jersey. As the Supreme Court has so stated, these factors, all considered, confer personal jurisdiction over Defendants.

Finally, Defendants fail to establish even the basic requirements that New Jersey is not the appropriate jurisdiction to hear this matter. It fails to establish that India is an adequate alternative forum, and that the private and public factors outweigh the substantial weight of granting a plaintiff its choice of forum.

For these reasons, which are more fully discussed below, Defendants' motion to vacate entry of default and to dismiss Plaintiff's Complaint must be denied.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Shavel is a family-owned textile business located in Princeton, New Jersey, which manufactures, imports and distributes home textiles and bedding to retailers and consumers throughout the United States. See Affidavit of Jon Shavel ("Shavel Aff."), ¶1. Shavel also has an on-line distribution business. Id., ¶2. Defendant Anand International ("Anand") has been Shavel's supplier since 2007. Id., ¶3. Upon information and belief, Suresh, Rakesh and Komal Garg are the owners of Anand. Id., ¶4.

In or about 2007, Shavel created a new line of sheets, MicroFlannel®/patent pending, which uses a unique method to create a flannel sheet that is soft to the touch and reduces pilling,

2

and makes the sheets more washable and durable. Id., ¶5. In or about January 2011, a representative of Shavel met with a representative of Anand at a the International Home Textiles Trade Fair in Frankfurt, Germany to discuss whether Anand could manufacture and produce Shavel's MicroFlannel® line of sheets and bedding products. Id., ¶6. They agreed that Anand would provide to Shavel samples of the sheet sets in Princeton, New Jersey. Id., ¶7.

On January 25, 2011, defendant Rakesh Garg came to Shavel's office in Princeton, New Jersey to bring counter samples of the sheet sets. Id., ¶8. After inspecting and approving of the counter sample, Shavel began negotiations with Mr. Garg regarding the costs, sewing, specifications, color range, and packaging of the MicroFlannel® line. Id., ¶9.

On March 9, 2011, defendant Komal Garg came to Shavel's office in Princeton at which time Shavel and Defendants entered into a contract for the manufacture of MicroFlannel® sheet sets. Id., ¶10. All of the purchase orders for the manufacture of the sheet sets originated from Shavel's office in Princeton. Id., ¶11. The majority of the deliveries of sheet sets were made to New Jersey and Texas. Id., ¶12.

In or about the end of May 2011, Defendants began adjusting the delivery schedule and further postponing delivery dates causing Shavel to miss deadlines to its clients. Id., ¶13. Shavel also became aware of quality issues related to the sheet sets, which were found to be napped poorly or not napped at all. Id. These delays, coupled with the fact that the sheet sets were not being made to Shavel's specifications in accordance with the contract, caused Shavel to suffer enormous damages both financially and to its reputation. Id. Shavel reached out to Defendants to remedy this problem. Id., ¶14. On June 13, 2011 and October 12, 2011, Rakesh Garg made another visit Shavel's Princeton, New Jersey office to discuss the production of the

sheet sets and the delivery delays, at which time he agreed they would remedy the problems. Id., ¶¶15-16.

Shavel representatives visited Anand in India two or three times to tour their mill and observe Anand's manufacturing and production of the sheet sets. Id., ¶17. Throughout Shavel's business relationship with Anand, the parties corresponded on a regular basis via electronic mail and telephone. Id., ¶18.

On October 19, 2011, after Rakesh Garg's visit to Shavel, Shavel received an email from Anand acknowledging the poor quality of the sheet sets. Id., ¶19; see also October 19, 2011 email, attached to the Certification of James G. O'Donohue ("O'Donohue Cert.") as Exhibit A. On December 20, 2011, Rakesh and Komal Garg came to Shavel with their father, Suresh Garg, and a New Jersey court certified translator to assist in the discussion. Further, Rakesh, Komal and Suresh accompanied Shavel's representatives to Sears, located at Quakerbridge Mall in Lawrence, New Jersey, and K-Mart, located in Ewing, New Jersey, to observe the poor quality of the sheet sets. Id., ¶20. Suresh Garg acknowledged that the quality of the sheet sets was as contracted and commented that the sheets were "not good." Id. Shavel has pictures of this visit. Id. Thereafter, Defendants and Shavel corresponded on a regular basis to try to correct the quality issues and the delivery delays. See Shavel Aff., ¶21; see also email exchanges between Shavel and Defendants, O'Donohue Cert., Ex. B.

At the request of Komal Garg, Defendants requested to meet with Shavel at their offices in Princeton, New Jersey as they were in New York for Market Week, a weeklong exhibition for home textile vendors. Id., ¶22; see also March 4, 2012 email, O'Donohue Ex. B. Shavel was unable to accommodate Komal Garg's request, but they agreed to meet on March 29, 2012. Shavel Aff., ¶23; see also March 12, 2012 email, O'Donohue Cert., Ex. B. On March 29, 2012,

4

Rakesh, Komal and Suresh Garg came Shavel's Princeton, New Jersey office where Shavel again provided a New Jersey court certified translator to discuss a resolution to the production and delivery problems. Shavel Aff., ¶23.

On March 28, 2012, Shavel filed a seven-count complaint ("Complaint") against Defendants in the Superior Court of New Jersey, Law Division, Mercer County, Docket No. MER-L-752-12. Shavel's complaint alleged devastating losses due to Defendants' delivery of poor quality goods, which goods were delivered too late to remedy, as Shavel had its own deadlines to meet with its vendors. Therefore, Shavel alleges damages due to Defendants' breach of contract, breach of contract under the Convention for the International Sale of Goods, breach of implied warranty of merchantability under UCC §2-314, breach of implied warranty of fitness for a particular purpose under UCC §2-315, breach of express warranty under UCC §2-313, consumer fraud, and breach of good faith and fair dealing.

After failing to resolve the issues with Defendants, on June 15, 2012, Shavel initiated service of the Complaint on Defendants by personal service pursuant to the terms of the Hague Convention. On June 26, 2012, Liliana Apolinario of Guaranteed Subpoena requested service of the documents in India to the Joint Secretary, Ministry of External Affairs, Legal & Treaties Division, the designated entity authorized to receive and effect service of judicial documents in India. See Affidavit of Liliana Apolinario ("LA Aff."), ¶4, O'Donohue Cert., Ex. C. On July 3, 2012, the Joint Secretary of the Ministry of External Affairs acknowledged Ms. Apolinario's letter and requested service on Defendants at Anand's address in Haryana, India. See July 3, 2012 letter, O'Donohue Cert., Ex. D.

On July 20, 2012, Shavel received correspondence from Subhash Chahar, Branch Manager with a credit company for Anand, acknowledging the Complaint. See July 20, 2012

email, O'Donohue Cert., Ex. E.  Specifically, Mr. Chahar stated that he had "been informed that a legal case has been filed by [Shavel] against M/s Anand International in the Superior Court of New Jersey.  Id.  Mr. Chahar also referenced specific allegations in the Complaint in his email to Shavel.  Id.  Therefore, it was evident that Defendants had been served with the Complaint.

On August 20, 2012, Shavel received a notice from the Mercer County Superior Court that the Complaint would be dismissed on October 9, 2012 for lack of prosecution.  See Court Notice, O'Donohue Cert., Ex. F.  In response to this notice, Shavel inquired with Guaranteed Subpoena to confirm that service had been made on Defendants.  Despite Mr. Chahar's acknowledgement of the Complaint, on September 24, 2012, Guaranteed Subpoena was unable to confirm with the Indian Authorities that personal service had been completed.  See generally LA Aff., O'Donohue Cert., Ex. C.  Ms. Apolinario prepared an Affidavit confirming that service was being attempted.  Id.

October 1, 2012, Shavel prepared an affidavit of service, which included Mr. Chahar's email, Ms. Apolinario's affidavit, and a certification that the Complaint had also been served via regular mail, recorded delivery and electronic mail to Defendants on September 28, 2012.  See Affidavit of Service with exhibits, O'Donohue Cert., Ex. G.  Defendants apparently received the mailed copies of the Complaint.  See Defendants' Exhibit A.

On or about November 21, 2012, Shavel received correspondence from the District and Sessions Judge in Panipat titled "Notice in case Anand International."  See Notice, O'Donohue Cert., Ex. H.  The notice stated that despite three separate attempts to personally serve Defendants on September 5, 2012, September 18, 2012, and September 24, 2012, Defendants were not personally served with the Complaint.  Id.  All three times, the process server spoke

with an accountant of the firm who stated that the Defendants were away on business and there was no set time to return. Id.

On November 5, 2012, Shavel's attorney received correspondence from Karamvir Dahiya requesting an extension of time to file a responsive pleading, which stipulation extended the time to file a responsive pleading until December 15, 2012.   See November 5, 2012 email, O'Donohue Cert., Ex. I.

On November 27, 2012, Defendants filed a Notice of Removal from Mercer County Superior Court of New Jersey to this Court pursuant to 28 U.S.C §§1332 and 1441.

On January 16, 2013, Shavel filed a Motion for Entry of Default pursuant to Federal Rules of Civil Procedure 55(a) against Defendants based upon their failure to plead or otherwise defend within the time allowed.

On January 21, 2013, Defendants filed a Motion to Vacate Default and Dismiss Plaintiff's Complaint based upon improper service, lack of personal jurisdiction and *forum non conveniens*.  Said motion was noticed for March 4, 2013 at 10:30 a.m.

## LEGAL ARGUMENT

### POINT I

**DEFENDANTS FAIL TO ESTABLISH GOOD CAUSE FOR VACATING ENTRY OF DEFAULT BECAUSE THEY HAVE NO MERITORIOUS DEFENSE AND OTHERWISE FAIL TO MEET THE FOUR-FACTOR TEST FOR VACATING ENTRY OF DEFAULT**

Defendants ask this court to vacate the entry of default because Defendants wrongly claim they were not properly served.  Defendants have not established good cause to vacate the entry of default because service upon Defendants was properly undertaken pursuant to the terms of the Hague Convention and Defendants were reasonably apprised of pending litigation.

7

Nevertheless, Defendants fail to establish <u>any</u> of the four factors required to vacate entry of default.

The Third Circuit laid out four factors to determine whether good cause exists to vacate entry of default: (1) whether lifting the default would prejudice the plaintiff; (2) whether the defendant has a *prima facie* meritorious defense; (3) whether the defaulting defendant's conduct is excusable or culpable; and, (4) the effectiveness of alternative sanctions. <u>Emcasco Ins. Co. v. Sambrick</u>, 834 F.2d 71, 73 (3d Cir. 1987). "While the district courts are urged to make explicit findings concerning all of these factors in considering a motion to vacate entry of default, the second factor – whether the defendant has a meritorious defense – is considered to be a dispositive 'threshold question.'" <u>National Specialty Ins. Co. v. Papa</u>, No. 11-2798, 2012 WL 868944, at *2 (D. N.J. Mar. 14, 2012) (citing <u>U.S. v. $55,518.05 in U.S. Currency</u>, 728 F.2d 192, 195 (3d Cir. 1984)). Defendants cannot establish a meritorious defense sufficient to overcome the good cause test to vacate entry of default, therefore their motion to vacate entry of default should be denied.

As an initial matter, Defendants have failed to proffer <u>any</u> meritorious defense to its actions. "A meritorious defense is one that, if established at trial, would constitute a complete defense to the action." <u>U.S. Currency</u>, 728 F.2d at 195. "It must allege specific facts beyond simple denials or conclusory statements." <u>National Specialty</u>, 2012 WL 868944, at *4 (internal citations omitted). Defendants cite to none. To the extent that Defendants rely on improper service of process, for the reasons set forth more fully in Point II, *infra*, their argument must fail. Therefore, on this threshold showing alone, Defendants' request to vacate entry of default must be denied.

Furthermore, since 2011, Shavel has suffered hundreds of thousands of dollars in losses due to Defendants' numerous and repeated delays, manufacturing defects, and failure to abide by the terms of the contract and purchase orders.  Upon filing this lawsuit in March 2012, Shavel has diligently sought proper service on Defendants, who have demonstrably attempted to avoid service by ignoring the Complaint they not only received, but forwarded to their creditors as well as their attorney in this matter.  Shavel has been prejudiced by Defendants' dilatory tactics, which prejudice will continue if Defendants are granted its request to vacate entry of default.

Most notably, Shavel generously granted Defendants additional time to respond to the Complaint once their attorney contacted Shavel's attorney.  On November 27, 2012, Defendants filed a Notice of Removal to remove this matter to this Court.  Same was granted.  On January 17, 2013, no less than 51 days passed before Shavel filed its Motion for Entry of Default.  Defendants failed to answer or file a motion after removing the matter to this Court.  Defendants state no reason for this oversight, let alone a reason sufficient to rise to the level of excusable or culpable.

With respect to the fourth prong, the Third Circuit has held that this factor is motivated by the court's recognition that default is a harsh sanction and that lesser sanctions may adequately deter bad conduct while allowing cases to be decided on their merits.  Emcasco, 834 F.2d at 73.  Where the moving party has failed to demonstrate a meritorious defense, that underlying rationale is undermined and the fourth prong has less force.  National Specialty Ins. Co., 2012 WL 868944, at *6 (citing Wyndham Hotels and Resorts, LLC v. Rhonda & Sons, Inc., No. 2:10-cv-2868, 2011 WL 1560666, at *2 (D. N.J. Apr. 25, 2012) (consideration of alternative sanctions was unnecessary where the court had considered and rejected the meritorious defenses

offered)).  Here, Defendants undeniably fall short as they fail to proffer any defense, let alone a meritorious defense.

For the foregoing reasons, Defendants' motion to vacate entry of default must be denied.

## POINT II

## DEFENDANTS WERE PROPERLY SERVED UNDER THE HAGUE CONVENTION AND UNDER ALTERNATIVE SERVICE AS PROVIDED FOR UNDER RULE 4(F)(3)

Defendants wrongly assert that Shavel did not attempt personal service pursuant to the Hague Convention and therefore service was improper.  Shavel not only attempted personal service through the proper channels in India, but there is ample evidence that service was effectuated so that Defendants were on notice of the allegations and the pendency of this action. Furthermore, Defendants were given a reasonably generous opportunity to present their objections, which were not timely presented even after the action was removed to this Court.

The Federal Rules of Civil Procedure state that in order to effect service on a foreign corporation, service must be made "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed. R. Civ. P. 4(h)(1); Fed. R. Civ. P. 4(f)(1).  The Hague Convention requires that process be served through the Central Authority designated by the State in which service is sought. Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov.15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 (hereinafter "Hague Convention").

A foreign individual or corporation may also be served in a foreign jurisdiction by other means not prohibited by international agreement. Fed. R. Civ. P. 4(f)(3); LG Elecs., Inc. v. ASKO Appliances, Inc., No. 08-828, 2009 WL 1811098 at *4 (D. Del. June 23, 2009).  While

India has specifically objected to service through postal channels, it has not objected to any other means of service (e.g. email). http://www.hcch.net/index_en.php?act=authorities.details&aid=712 (last visited February 17, 2013).

As an initial matter, contrary to Defendants' assertions, service was initiated by personal service comporting with the requirements under the Hague Convention. On June 15, 2012, Shavel requested personal service on Defendants through Guaranteed Subpoena, an entity specializing in service of process, including service in foreign countries. See LA Aff., ¶1, O'Donohue Cert., Ex. C. On June 26, 2012, Ms. Apolinario requested service of the documents in India to the Joint Secretary, Ministry of External Affairs, Legal & Treaties Division, which has been designated by India as the entity to receive and effect service of judicial documents. Id., ¶¶4-5. On July 3, 2012, the Joint Secretary of the Ministry of External Affairs acknowledged Ms. Apolinario's letter and requested service on Defendants at Anand International's address in Haryana, India. See O'Donohue Cert., Ex. D.

Indeed, on July 20, 2012, Shavel received correspondence from Subhash Chahar, Branch Manager with a credit company for Anand International, specifically acknowledging the Complaint and identifying and quoting specific allegations in the Complaint. See O'Donohue Cert., Ex. E. Therefore, it was evident that Defendants had been served with the Complaint and had forwarded the Complaint to its creditor.

Despite this correspondence, Ms. Apolinario was unable to confirm that service had been effectuated by the Central Authority. On August 20, 2012, Shavel received a notice from the court that the Complaint would be dismissed on October 9, 2012 for lack of prosecution. See O'Donohue Cert., Ex. F. In response to this notice, Shavel requested from Guaranteed Subpoena

a status on personal service on Defendants in India.  On September 24, 2012, Ms. Apolinario prepared an Affidavit, which was submitted to the Mercer County Superior Court on October 1, 2012, along with Mr. Chahar's email and notice that the Complaint had also been served via regular mail, recorded delivery and electronic mail to Defendants on September 28, 2012.  <u>See</u> O'Donohue Cert., Ex. G.  Defendants apparently received the mailed copies of the Complaint. <u>See</u> Defendants' Exhibit A.

On or about November 21, 2012, Shavel received correspondence from the District and Sessions Judge in Panipat titled "Notice in case Anand International."  <u>See</u> O'Donohue Cert., Ex. H.  Despite three attempts to personally serve the Complaint, the Defendants were apparently out of town and the accountant of the firm could not provide their date of return.  <u>Id.</u>

Nevertheless, on November 5, 2012, Shavel's attorney received correspondence from Karamvir Dahiya requesting an extension of time to file a responsive pleading, which stipulation extended the time to file a responsive pleading until December 15, 2012.  <u>See</u> O'Donohue Cert., Ex. I.  On November 27, 2012, Defendants filed a Notice of Removal from Mercer County Superior Court of New Jersey to this Court pursuant to 28 U.S.C §§1332 and 1441.

The United States Supreme Court's pronouncement of the fundamental constitutional requirements of service of process is clear:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality **is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.**

<u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S. 306, 314 (1950) (emphasis added). Against this backdrop, Shavel has not only complied with the Hague Convention regarding service of process, but it is clear based on the actions of Defendants' creditor and attorney that

Defendants were on notice which "apprised [them] of the pendency of the action and afford[ed] them an opportunity to present their objections."

In a case bearing remarkably similar facts to the case at bar, the District Court held that service through counsel where it is apparent that a party is in contact with his attorney is proper service. Marlabs Inc. v. Jakher, No. 07-cv-04074, 2010 WL 1644041, at *3 (D. N.J. Apr. 22, 2010). As in the present case, the plaintiff in Marlabs retained Guaranteed Subpoena to effect service to India. Id., at *2. Reacting to a notice from the Court that the matter would be dismissed for lack of prosecution, plaintiff submitted an affidavit requesting additional time to serve the defendant because "it was encountering problems in effecting service on Defendant in India" and service "could take in excess of six (6) months." Id. The plaintiff submitted an affidavit, much like the one Shavel has attached here, in support of these facts. Id.

In Marlabs, the detailed notes of the service processor indicated that while he was unable to serve the defendant personally, the person with whom the processor spoke was in contact with the defendant so that the defendant was reasonably aware that a lawsuit had been initiated against him. Id., at * 3. In the instant matter, the service processor in this matter spoke with the accountant at Anand, who was clearly in contact with the Defendants as he was aware of where they were each time that the service processor attempted personal service. See O'Donohue Cert., Ex. G. In Marlabs, the Court permitted service upon counsel in light of the defendant's denial of having been served. Unlike Marlabs, there is ample evidence that Defendants received the Complaint and forwarded the Complaint first to their creditor in an effort to collect alleged monies owed to Anand, and then to their attorney.

In yet another matter regarding service to India, the District Court held that service by express mail and e-mail was acceptable because "no international agreement prohibits these

13

forms of service and that service by these methods is reasonably calculated to apprise [the defendants] of the claims against it." <u>Napp Technologies, L.L.C. v. Kiel Laboratories, Inc.</u>, No. 04-3135, 2008 WL 5233708, at *4 (D. N.J. Dec. 12, 2008). In 2007, India became a signatory to the Hague Convention and objected to service through postal channels, but it has not objected to service by any other methods, including email. Indeed, email is a recognized alternate means of service "not prohibited by the international agreement." <u>Fed. R. Civ. P.</u> 4(f)(3); <u>see also</u> <u>In re Heckmann Corp. Securities Litigation</u>, No. 10-378, 2011 WL 5855333, at *4 (D. Del. Nov. 22, 2011) ("[N]o court has stated such service is impermissible under the Federal Rules of Civil Procedure.").

New Jersey Court Rule 4:4-4(b)(2) permits substituted or constructive service "as provided by law." <u>N.J.R.</u> 4:4-4(b)(2). On September 28, 2012, while this matter was still in the Mercer County Superior Court, Shavel also mailed the Complaint to Defendants via regular and recorded delivery. Shavel's attorney also emailed the Complaint to the email addresses used by Shavel to correspond with Defendants. If there was any doubt as to Defendants' notice of the pendency of litigation, it was made clear upon receipt of the Complaint through these channels, as Shavel received notice from Defendants' attorney acknowledging that the Complaints had been received by Defendants.

For the foregoing reasons, Defendants have been properly served the Complaint. If the Court is inclined to find that service was improper under Shavel's attempts under the Hague Convention, Shavel respectfully requests an order declaring service upon Defendants' through Defendants' attorney or, in the alternative, by email pursuant to Fed. R. Civ. P. 4(f)(3).

## POINT III

## THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS WHICH HAVE HAD SUBSTANTIAL CONTACTS WITH NEW JERSEY AND WHERE TRADITIONAL NOTIONS OF FAIR PLAY AND SUBSTANTIAL JUSTICE REQUIRE THEM TO DEFEND THEMSELVES IN NEW JERSEY

Despite their representations to the contrary, Defendants have made more than the requisite minimum contacts with New Jersey to justify New Jersey's assertion of jurisdiction over Defendants, meeting the Supreme Court's test to confer personal jurisdiction over them.

The limitations on the exercise of personal jurisdiction are coextensive with the Due Process Clause of the Fourteenth Amendment, which requires due process to be satisfied "when a nonresident defendant has certain minimal contacts with the forum state 'such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Electro-Catheter Corp. v. Surgical Specialties Instrument Co., Inc., 587 F.Supp. 1446, 1448-49 (D. N.J. 1984) (citing International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); see also Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 145 (3d Cir. 1992) ("We are constrained, under New Jersey's long-arm rule, only by the traditional notions of fair play and substantial justice, inhering in the Due Process Clause of the Constitution.").

In differentiating general versus specific jurisdiction, the Third Circuit defines general jurisdiction as that where the claim does not arise out of or is unrelated to the defendant's contacts with the forum and specific jurisdiction as that where the claim is related to or arises out of the defendant's contacts with the forum state.  See Dollar Savings Bank v. First Security Bank of Utah, 746 F.2d 208, 211 (3d Cir.1984).  Here, we need not analyze this general jurisdiction requirements because Defendants' contacts with New Jersey more than satisfy the minimum contacts requirement and those contacts form the basis of Shavel's Complaint.

15

The Supreme Court has held that in order to find specific jurisdiction over a foreign defendant, the defendant must have purposefully established minimum contacts with the forum state so that the defendant can reasonably anticipate being haled into court there. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985).

As an initial matter, the Court must first determine whether Defendants have made sufficient minimum contacts so that they have "purposefully directed [their] activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." Id. (internal citations omitted). One who purposefully directs activities toward forum residents or who has "purposefully derive[d] benefit" from his conduct in the forum state is found to have purposefully availed himself to the forum state and to the courts therein. Id., at 474-75.

A "singular contact" with a forum state is sufficient to confer specific jurisdiction over a defendant when such contact constitutes the basis for the claim against defendant. One World Botanicals Ltd. v. Gulf Coast Nutritionals, Inc., 987 F. Supp. 317, 323 (D. N.J. 1997) (singular sale of pet supplies bearing infringing mark to a New Jersey distributor establishes jurisdiction over Florida defendant); see also United States Golf Ass'n v. United States Amateur Golf Ass'n., 690 F. Supp. 317, 321 (D. N.J. 1988) ("Jurisdiction may also be conferred over non-residents in tort cases based upon a single deliberate contact with New Jersey where that contact resulted in the alleged injury").

Here, the Court need not look to just a singular contact as Defendants have engaged in numerous and repeated contacts with New Jersey, to wit: Shavel and Anand have conducted business together since 2007; Defendants have directed all contact with Shavel in New Jersey by email and telephone; Defendants have solicited significant business with Shavel in New Jersey to

the tune of millions of dollars; the contract in dispute in the Complaint was created in the presence of Anand's representatives in Shavel's offices in New Jersey; in 2011 and 2012, one or more of the Defendants have travelled to Princeton, New Jersey no less than six (6) times to initiate the contract in dispute, negotiate the terms of the contract, and to discuss issues related to the disputed contract; Anand made several contacts with Shavel in New Jersey regarding payment of invoices, delivery delays, production problems, and numerous other issues; Defendants shipped goods to New Jersey; Defendants toured two New Jersey stores to observe the defective products; and, Anand sent its invoices to Shavel's Princeton, New Jersey office.

In addition to these specific contacts in New Jersey, the Supreme Court has held that under the stream-of-commerce theory, where a manufacturer's products flow into the forum state, this bolsters an affiliation germane to specific jurisdiction. <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 131 S.Ct. 2846, 2855 (2011). The Supreme Court has held that:

> "When a corporation 'purposefully avails itself of the privilege of conducting activities within the forum State,' it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State. **Hence if the sale of a product of a manufacturer or distributor** such as Audi or Volkswagen **is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others.** The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by customers in the forum State."

<u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297-98 (1980) (internal citations omitted) (emphasis added). Anand undoubtedly serves New Jersey through its manufacture of

the products which were supplied to Shavel and are sold throughout New Jersey, and the United States.  More importantly, Anand touts its "substantial business in the USA" with several stores, including Family Dollar, which has several locations in New Jersey.  See Anand's webpage "About Us," O'Donohue Cert., Ex. J.

Finding specific jurisdiction related to an Indian supplier's contact with a New Jersey pharmaceutical company, the District Court in Napp held that the Indian company had "purposefully engaged in activities directed towards New Jersey" based upon numerous factors including the ongoing business relationship evidenced by an e-mail exchange soliciting a meeting at a trade show in Las Vegas; a request to test the product; a request for quotes for other pharmaceutical materials; and, the Indian company's response with prices, availability and terms of delivery.  Napp Technologies, 2008 WL 5233708, at *6.  In Electro-Catheter Corp., the District Court found sufficient a corporation's contacts including an ongoing business relationship where products were purchased via telephone and mail; the volume of the purchases which were over a half a million dollars; 25 visits by the president of the company over a 14 year period; and, visits by other representatives in the company.  Electro-Catheter Corp., 587 F.Supp. at 1450-51.  See also Western Union Telegraph v. T.S.I. Ltd., 545 F.Supp.; 329, 332 (D. N.J. 1982) (finding that in a breach of contract suit, the exercise of jurisdiction of a nonresident corporation that visited New Jersey to negotiate the purchase of goods by mail and telephone was fair and reasonable); Alchemie Intern. Inc. v. Metal World, Inc., 523 F. Supp. 1039 (D. N.J. 1981) (finding personal jurisdiction properly exercised where there was significant mail and telephone contacts with the resident seller after the defendant solicited the contract even though the defendant did not visit the forum state).

The Third Circuit found sufficient minimum contacts in multiple telephone calls and the mailing of a sales agreement to New Jersey, and one visit to New Jersey. See Carteret Sav. Bank, FA, 954 F.2d at 147.

There is no question that Defendants have made significant and substantial contacts with New Jersey and have "purposefully availed" themselves to New Jersey by virtue of these contacts. Therefore, the first prong of the test for personal jurisdiction has been amply met.

Once the Court has determined that there are sufficient minimum contacts to confer personal jurisdiction, the court must determine whether "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" Burger King, 471 U.S. at 476 (quoting International Shoe, 326 U.S. at 320). "Only in rare cases do the minimum requirements inherent in the concept of fair play and substantial justice defeat the reasonableness of jurisdiction even though the defendant has purposefully engaged in the forum activities." Napp Technologies, 2008 WL 5233708, at *5 (citing Asahi Metal Industry Co. v. Super. Ct. of Cal., 480 U.S. 102, 116 (1987)).

Defendants' reliance upon the considerations laid out in the Tenth Circuit to argue that personal jurisdiction on Defendants is erroneous. See Defendants' Brief, p. 12. Neither the Third Circuit, nor any New Jersey court has adopted this test. On the other hand, the District Court has held that the bilateral business relationship between two companies exchanging emails and telephone calls, numerous purchase orders, visits, and the nature of the business relationship was sufficient to "conclude that [the] defendant could reasonably have anticipated being subject to the jurisdiction of New Jersey courts for claims arising out of its business activities in New Jersey. Electro-Catheter Corp., 587 F.Supp. at 1455. In Napp, where the contacts were strikingly similar to the case at bar, the Court held that while "having to defend oneself in a

foreign legal system is a heavy burden, that must be balanced by the interests of the forum state, plaintiff's interest in obtaining relief, and the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." <u>Napp Technologies</u>, 2008 WL 5233708, at *6 (citing <u>World-Wide Volkswagen</u>, 444 U.S. at 292).

Defendants' proffered reasons for unreasonableness stems from its location in India. Defendants wrongly claim that because it has only visited New Jersey a few times and all of its manufacturing is located in India, it should not be required to defend Shavel's claims in New Jersey. As the District Court has so noted, location in a foreign country alone, is not enough to avoid being haled into court here, especially where its contacts with New Jersey are the very basis for Shavel's claims. Furthermore, Defendants have failed to state any reason why a contract dispute between the two parties requires that this dispute be litigated in India. The contract arose in New Jersey, Defendants travelled to New Jersey several times to discuss the contract, and Defendants have reached out to Shavel in New Jersey to remedy contract disputes. Balancing the hardship of traveling from a foreign country to defend these claims against Shavel's interest in obtaining relief and the substantive social policies in availing themselves of the courts to afford this relief, Defendants' claims must fail. As such, it is reasonable for Defendants to be subject to the jurisdiction of this Court.

<div align="center">**POINT IV**</div>

**THIS COURT SHOULD RETAIN JURISDICTION OF THIS MATTER BECAUSE THE DISPUTE IS CONTRACTUAL, THE DISPUTE AROSE FROM DEFENDANTS' CONTACTS IN NEW JERSEY, AND PLAINTIFF IS IN NEW JERSEY**

New Jersey is the proper forum for this matter because the underlying dispute is contractual, which contract arose in New Jersey, and all contacts regarding the terms of the contract are governed under New Jersey law.

A plaintiff enjoys preference to choose where to institute a lawsuit. "Generally, it is not the role of the court to deny a plaintiff his choice of forum where the plaintiff has filed his claim in conformity with statutory and constitutional jurisdictional requirements." Miller v. Boston Scientific Corp., 380 F.Supp.2d 443, 447 (D.N.J. 2005) (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 258 (1981). Thus, while the court has discretion in implementing the doctrine of *forum non conveniens*, "it must be sparingly applied, inasmuch as its application results in the dismissal of a case over which the Court has jurisdiction and would ordinarily have a duty to resolve." American Cyanamid Co. v. Picaso-Anstalt, 741 F.Supp. 1150, 1155 (D. N.J. 1990). "Accordingly, in any *forum non conveniens* analysis, substantial weight is given to plaintiff's choice of forum." Id.

The Third Circuit's analysis to determine whether or not to grant a motion to dismiss for *forum non conveniens* is two-fold: the Court must first ascertain whether there is an adequate alternative forum in which the suit may be brought; and if there is an adequate forum, the Court must then weigh and balance several private and public interest factors to determine whether or not dismissal is appropriate. Lacey v. Cessna Aircraft Co., 862 F.2d 38, 43 (3rd Cir. 1988). The defendant bears the burden of persuasion as to all elements of the *forum non conveniens* analysis.

<div align="center">21</div>

Id., at 44.  Defendants have not proffered any of the elements necessary to dispute forum in New Jersey, therefore their motion to dismiss on *forum non conveniens* grounds should be denied.

The determination of whether India is an adequate alternate forum is a threshold issue on a motion to dismiss for *forum non conveniens*.  Peerless Ins. Co. v. Ambi-Rad, Ltd., No. 07-5402, 2009 WL 790898, at *7 (D. N.J. Mar. 23, 2009).  In order to show that India is an adequate forum, Defendants must show that (1) they are amenable to process in India and (2) that the subject matter of the lawsuit is cognizable in India and provides Shavel with redress.  Technology Development Co., Ltd. v. Onischenko, 536 F.Supp.2d 511, 519 (D. N.J. 2007).  The District Court further noted with respect to adequacy requirement:

> "Where there is a legitimate dispute concerning the adequacy of a foreign remedy, a defendant seeking a *forum non conveniens* dismissal must generally provide record evidence indicating that the plaintiff could obtain proper redress in the alternative forum. ... **The existence of an adequate remedy in the foreign forum is crucial, because an American court cannot condition dismissal on the consent of the foreign court to provide plaintiff with an opportunity to obtain such redress.**

Miller v. Boston Scientific Corp., 280 F.Supp.2d 443, 449-50 (D. N.J. 2005) (emphasis added).  Thus, without this threshold record evidence, Defendants cannot prevail on its motion to dismiss for *forum non conveniens*.

As an initial matter, Defendants have not stated whether they would be amenable to process in India.  Nevertheless, the court must find that they are amenable based upon the record, of which there is none.  With respect to the second prong, three of Shavel's counts are governed by New Jersey law: (1) breach of contract; (2) breach of good faith and fair dealing; and (3) violations under the Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*  Defendants again fail to establish that these are "cognizable" actions in India or the availability to Shavel for redress.

Defendants state no more than conclusory language that India has been found to be an adequate forum in the past. Without more, Defendants' motion must fail.

If the Court does find that India is an adequate forum, the Court must engage in a balancing test to determine whether the private and public interest factors weighs in favor of retaining jurisdiction. Peerless Ins. Co., 2009 WL 790898, at *9. Even if the Court holds that these factors do not weigh in favor of retaining jurisdiction, Defendants must prove that, in the balance of the factors, the choice of forum is "vexatious and oppressive to defendants out of all proportion to plaintiff's convenience." Id. (citing Piper, 454 U.S. at 241). Here again, Defendants fall short.

The private interest factors to be considered in a forum on conveniens analysis include (1) the relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining willing witnesses; and, (4) practical considerations that make trial of a case easy, expeditious and inexpensive. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947).

Contrary to Defendants' assertions, the conduct alleged did not occur in India, rather it occurred throughout the many transactions which took place in New Jersey. The contract arose in New Jersey, the purchase orders were written in New Jersey, and a majority of the goods were shipped to the United States, which products were sold in stores throughout New Jersey. As applied to the circumstances here, the private interest factors support retaining jurisdiction in New Jersey. Furthermore, Shavel's claims are contractual. The only proofs necessary include contracts, purchase orders, communications by and among the parties, and samples of the defective product. The only witnesses required from India are the Defendants. On the other hand, Shavel's witnesses would include buyers, recipients of the products manufactured by

Defendants, and potentially experts, all of whom are located in the United States, and in New Jersey. Finally, as the underlying claims are contractual, this matter is far from complex. The private factors weigh substantially in favor of retaining jurisdiction in New Jersey.

The public interest factors include (1) administrative difficulties flowing from court congestion; (2) the interest in having local disputes resolved at home; (3) the interest in having a case tried in the district that is familiar with applicable law; (4) avoidance of unnecessary problems in conflicts of laws; and (5) the unfairness of imposing jury duty on a community with no relationship to the litigation. Gulf Oil, 330 U.S. at 508. Here again, Defendants cannot support a finding of dismissal based upon *forum non conveniens*.

As an initial matter, Defendants wrongly focus the dispute on the manufacturing of the sheet sets, however this is a contractual dispute. The place where the sheet sets were manufactured is of no moment. It matters only that the contract that governs the terms of the agreement between Shavel and Defendants arose in New Jersey, is subject to the laws of New Jersey, and does not involve the application of Indian law.

For these reasons, New Jersey should retain jurisdiction and Defendants' motion to dismiss Shavel's Complaint based on *forum non conveniens* should be denied.

## CONCLUSION

For the foregoing reasons, Defendants' request to vacate entry of default and to dismiss Plaintiffs' Complaint must be denied.

<div style="margin-left: 50%;">

Respectfully submitted,
HILL WALLACK LLP


By:  /s/ James G. O'Donohue
     James G. O'Donohue
     202 Carnegie Center
     Princeton, New Jersey 08543
     (609) 924-0808
     jodonohue@hillwallack.com
     Attorneys for Shavel Associates, Inc.

</div>

Dated:  February 19, 2013

James G. O'Donohue, Esq.
HILL WALLACK, LLP
202 Carnegie Center
Princeton, New Jersey 08540
(609)924-0808
jodonohue@hillwallack.com
Attorneys for Plaintiff Shavel Associates, Inc.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHAVEL ASSOCIATES, INC., <br><br> Plaintiff, <br><br> v. <br><br> ANAND INTERNATIONAL, SURESH GARG, RAKESH GARG AND KOMAL GARG, <br><br> Defendants. | CIVIL ACTION NO. 3:12 CV-7318-PGS-LHG <br><br> DOCUMENT ELECTRONICALLY FILED <br><br> **CERTIFICATION OF SERVICE** |

This is to certify that a true and correct copy of the foregoing

- **Brief in Opposition to Defendants' Motion To Vacate Entry of Default And Dismiss Plaintiff's Complaint;**
- **Affidavit of Jon Shavel**
- **Certification of James G. O'Donohue with Exhibits**
- **Notice of Cross Motion**
- **Proposed Order**

is to be electronically filed. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. A copy of same has also been served on this date upon counsel of record via electronic mail. A courtesy copy has been sent to the Honorable Peter G. Sheridan, U.S.D.J. via overnight delivery.

Dated: February 19, 2013

By:___ /s/ James G. O'Donohue
JAMES G. O'DONOHUE